<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TIM MCGEACHY, | : | **Hon. Jose L. Linares** |
| Petitioner, | : | Civil No. 10-3342 (JLL) |
| v. | : |  |
| JOHN DOE #1 WARDEN COVER, et al., | : | <u>OPINION</u> |
| Respondents. | : |  |

**APPEARANCES**:

    TIM MCGEACHY, #23318
    Hudson County Correctional Center
    35 Hackensack Avenue, C-500-East
    Kearny, NJ  07032
    Petitioner <u>Pro</u> <u>Se</u>

**LINARES**, District Judge:

    Tim McGeachy, a pretrial detainee at Hudson County Correctional Center ("HCCC"), seeks to file a Complaint seeking damages from Lawrence County Correction Center in Pennsylvania, its warden, the Sheriff of Hudson County, New Jersey, and various Jane and John Does.  <u>See</u> 28 U.S.C. § 1915(b).  This Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and collect the $350 filing fee by directing the Warden of HCCC to deduct installment payments in accordance with 28 U.S.C. § 1915(b).  This Court has screened the Complaint for dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and, for the reasons explained below, will dismiss the Complaint for failure to state a claim upon which relief may be granted.

## I. BACKGROUND

In the Complaint, McGeachy makes the following factual assertions:

> That on the 8th day of April 2010 that defendant(s) John Doe #1 the warden of Lawrence Co. Pennsylvania Jail in New Castle PA., did allow plaintiff to be illegally released to defendant John Doe #2 Hudson County Sheriff's Dept., who in turn transported plaintiff across state lines in violation of the Uniform Criminal Extradition Act (U.C.E.A) which violated plaintiff rights under the United States Constitution.

(Docket Entry #1, p. 8.)

Plaintiff further claims that the Lawrence County Jail Warden violated his rights by allowing him to be released to Hudson County officials without a governor's warrant of extradition. (Docket Entry #1, p. 5.) For violation of his rights, Plaintiff seeks 20 million dollars in compensatory damages and five million dollars in punitive damages. (Id. at 9.)

Plaintiff previously filed in this Court a Petition for a Writ of Habeas Corpus challenging his incarceration at the Hudson County Correctional Center. See McGeachy v. Veley, Civil No. 10-3343 (JLL) (D.N.J. filed June 30, 2010). By Opinion and Order entered August 24, 2010, this Court summarily dismissed the Petition without prejudice to the filing of a petition pursuant to 28 U.S.C. § 2254 after Petitioner exhausted remedies available in the courts of the State of New Jersey. This Court will briefly outline Plaintiff's allegations in that petition, as they fill in the gaps of the meager allegations in this Complaint. Plaintiff alleged that on December 31, 2009, New Castle police officers arrested him in New Castle, Pennsylvania, on a homicide warrant issued in Hudson County, New Jersey. McGeachy allegedly elected to challenge the extradition and, through counsel, filed a habeas petition in the Court of Common Pleas of Lawrence County on March 1, 2010. See Pennsylvania v. McGeachy, Docket No. CR-0000403-09 (filed Jan. 6,

2

2010) (attached to petition at docket entry #1 at pp. 11-15.). The docket in the Pennsylvania matter, which was also attached to the petition, showed that on April 1, 2010, Judge Michael J. Wherry ordered McGeachy released to an agent of the State of New Jersey for transportation to New Jersey. McGeachy alleged in the petition that on April 8, 2010, Lawrence County Jail officials released him to the custody of the Hudson County Sheriff, whose agents transported him to the Hudson County Jail. Although the petition did not list grounds, in a narrative form McGeachy claimed that his transfer to New Jersey authorities violated his rights under the Extradition Act because the Governor of Pennsylvania did not sign a governor's warrant and the extradition papers were not proper. He sought a writ of habeas corpus determining that he was illegally imprisoned at Hudson County Correctional Center. This Court dismissed the petition because habeas relief based on irregularities in the extradition procedure is not available to a petitioner once he is in the demanding state. See Harden v. Pataki, 320 F. 3d 1289, 1299 (11th Cir. 2003). The dismissal was without prejudice to the filing of a § 2254 petition in the event that McGeachy was convicted on the New Jersey charges and he exhausted his federal claims before all three levels of the New Jersey courts.

## II.  STANDARD OF REVIEW

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

3

Shadyside, 578 F.3d 203 (3d Cir. 2009). The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than

> conclusions, are not entitled to the assumption of truth." Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

The Extradition Clause of the Constitution provides:

> A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from

>   which he fled, be delivered up, to be removed to the State having
>   Jurisdiction of the Crime.

U.S. CONST. art. IV, § 2, cl. 2.

The Extradition Act, 18 U.S.C. § 3182, N.J. STAT. ANN. § 2A:160-1 et seq., provides procedures to carry out the constitutional mandate. See New Mexico ex rel. Ortiz v. Reed, 524 U.S. 151, 152 (1998); Cuyler v. Adams, 449 U.S. 433, 443 (1981). The Extradition Act provides that, when the governor of one state demands of the governor of another state a person as a fugitive from justice and produces an indictment or affidavit made before a magistrate which charges the person with a crime, the executive authority of the asylum state is required to arrest the fugitive, notify the demanding state, and confine the fugitive for a minimum of 30 days. See 18 U.S.C. § 3182. The Extradition Act, like the Uniform Criminal Extradition Law ("UCEL"), N.J. STAT. ANN. § 2A:160-9 et seq., requires the governor of the asylum state to honor a proper demand from the governor of the demanding state for a fugitive who has fled the demanding state. See 18 U.S.C. § 3182; N.J. STAT. ANN. § 2A:160-11, 15. If the governor of the asylum state decides that the demand is proper, then the governor must sign a warrant authorizing a peace officer to arrest the fugitive and deliver him to an agent of the demanding state. See N.J. STAT. ANN. § 2A:160-15, 16. The officer in the asylum state who executes the arrest warrant may confine the fugitive in a county jail, and "the keeper of such jail must receive and safely keep the prisoner until the officer or person having charge of him is ready to proceed on his route." N.J. STAT. ANN. § 2A:160-20. Under the terms of UCEL, a fugitive in the asylum state may not be delivered to the demanding state unless he is first taken before a judge who informs him of the demand and the crime with which he is charged, and asks him if he desires to test the

legality of his arrest. N.J. STAT. ANN. § 2A:160-18. Significantly, if the fugitive desires to test the legality of his arrest, then the judge in the asylum state must fix a reasonable time within which the fugitive may apply for a writ of habeas corpus.[2] Id. The purpose of the writ is limited to a challenge to the fugitive's detention in the asylum state. See Barton v. Norrod, 106 F. 3d 1289, 1298 (6th Cir. 1997). "The courts of asylum States may do no more than ascertain whether the requisites of the Extradition Act have been met . . . . [T]he Act leaves only four issues open for consideration before the fugitive is delivered up: (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." California v. Superior Court of California, San Bernadino County, 482 U.S. 400, 407-08 (1987) (citation and internal quotation marks omitted); see also Michigan v. Doran, 439 U.S. 282, 288-89 (1978) .

In this case, Plaintiff seeks damages because he claims that the Pennsylvania warden released him to New Jersey authorities without a governor's warrant in violation of the Extradition Act. However, Plaintiff's allegations in his habeas petition establish that he challenged the legality of his extradition in the Pennsylvania courts in a habeas proceeding, and

---

[2] Alternatively, a person may file a complaint and affidavit in the courts of the asylum state charging the fugitive with a crime or violation of parole or probation in another state. N.J. STAT. ANN. § 2A:160-21. In that case, the UCEL requires a judge or magistrate of the asylum state to issue an arrest warrant. Id. When the fugitive is brought before the judge, "the judge or magistrate must, by a warrant reciting the accusation, commit him to the county jail for such a time not exceeding 30 days and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused give bail . . . or until he shall be legally discharged." N.J. STAT. ANN. § 2A:160-23. If the fugitive is not arrested under warrant of the governor by the expiration of the 30 days specified in the warrant, a judge may discharge him or recommit him for a period not to exceed 60 days. N.J. STAT. ANN. § 2A:160-25.

that on April 1, 2010, Judge Michael J. Wherry of the Pennsylvania Court of Common Pleas ordered McGeachy released to an agent of the State of New Jersey for transportation to New Jersey.³  Moreover, "[t]o establish a § 1983 claim for monetary relief, including a showing of damages, [plaintiff] will have to prove that he suffered some deprivation of liberty greater than that which he would have suffered through extradition in full compliance with the UCEA," Rivera v. Algarin, 350 Fed. App'x 703, n. 10 (3d Cir. 2009) (quoting Knowlin v. Thompson, 207 F. 3d 9007, 909 (7th Cir. 2000)), and Plaintiff does not allege facts showing that he suffered injury from being released from Pennsylvania and transported to New Jersey.  For example, Plaintiff does not allege that he would have been able to prevent the extradition if the proper procedures had been followed.  Because Plaintiff has not alleged facts showing that defendants violated the Extradition Act or the Extradition Clause, and he has not alleged facts showing that he was injured, this Court will dismiss the Complaint for failure to state a claim upon which relief may be granted.

## IV.  CONCLUSION

Based on the foregoing, the Court grants Plaintiff's application to proceed in forma pauperis and dismisses the Complaint.


/s/ Jose L. Linares
**JOSE L. LINARES, U.S.D.J.**

Dated: June 2,  2011

---

³ "In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion." McTernan v. City of York, Penn., 577 F. 3d 512, 526 (3d Cir. 2009) (citation omitted).

8